UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL CASE NO. |
| | : | 3:20-CR-00085 (JCH) |
| v. | : | |
| | : | |
| DANIEL ESTREMERA, | : | |
|     Defendant. | : | JULY 30, 2024 |

**RULING ON MOTION FOR SENTENCE REDUCTION (DOC. NO. 403)**

**I.     INTRODUCTION**

Pending before this court is defendant Daniel Estremera ("Mr. Estremera")'s Motion for Sentence Reduction, filed on September 26, 2023.  See Motion for Sentence Reduction ("Def.'s Mot.") (Doc. No. 403), see also Memorandum in Support ("Def.'s Mem.") (Doc. No. 414).  Mr. Estremera seeks a reduction in his sentence on the grounds that his medical conditions present "extraordinary and compelling reasons" for a reduction under 18 U.S.C. § 3582(c)(1)(A).  The government opposes the motion. See Memorandum in Opposition ("Mem. in Opp.") (Doc. No. 429).

For the reasons stated below, the Motion is denied.  The court grants both accompanying motions to seal, on the grounds that they apply to confidential medical records.  See Motion to Seal BOP Medical Records (Doc. No. 416), Motion to Seal Exhibit 1 to the Government's Memorandum (Doc. No. 430).

**II.    BACKGROUND**

In July 2021, Mr. Estremera pled guilty to one count of conspiracy to distribute and to possess with intent to distribute 400 grams or more of a mixture and substance containing a detectable amount of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1),

1

841(b)(1)(A), and 846. See Plea Agreement (Doc. No. 141). Specifically, between the summer of 2019 and his arrest in April of 2020, Mr. Estremera was involved in the trafficking and distribution of kilogram quantities of fentanyl within Connecticut. See Presentence Investigation Report ("PSR") at ¶¶ 6-24.

This was Mr. Estremera's fifth drug-related conviction. See PSR at ¶¶ 42-48. Mr. Estremera had previously served a 10-year prison sentence for his role in a heroin distribution conspiracy. See Id. at ¶ 48. He was released from Bureau of Prisons ("BOP") custody in March of 2018, and had only recently begun an eight-year term of supervised release when he began engaging in the conduct in the present case. Id. On February 24, 2022, this court sentenced Mr. Estremera to a below-guidelines, 10-year mandatory minimum term of imprisonment, to be served consecutively with a sentence of 18 months for his supervised release violations. See Judgment (Doc. No. 260).

Mr. Estremera filed his motion for a sentence reduction pro se on September 26, 2023. See Def.'s Mot. The court ordered that counsel be appointed to represent Mr. Estremera, see Order (Doc. No. 404), and Mr. Estremera's counsel filed a memorandum in support of Mr. Estremera's Motion on January 19, 2024, see Def.'s Mem. Mr. Estremera's counsel also filed BOP medical records and moved to seal them. See BOP Medical Records (Doc. No. 415), Motion to Seal (Doc. No. 416). On February 9, 2024, the government filed a memorandum in opposition to the Motion. See Mem. in Opp. The government also moved to seal Exhibit 1 to its memorandum on the basis that it contains Mr. Estremera's immunization records, which are BOP medical records. See Motion to Seal (Doc. No. 430).

2

**III.    LEGAL STANDARD**

Under section 3582(c)(1)(A) of title 18 of the United States Code, as modified by the First Step Act of 2018, an incarcerated defendant may move for compassionate release.  See 18 U.S.C. § 3582(c)(1)(A).  Pursuant to section 3582(c)(1)(A)(i), a court may not modify a term of imprisonment "once it has been imposed" except in a case where, after exhaustion of administrative remedies, the court considers the applicable section 3553(a) factors and finds that "extraordinary and compelling reasons warrant such a reduction."  Id. § 3582(c)(1)(A)(i).  Effective November 1, 2023, section 1B1.13 of the Sentencing Guidelines now applies to motions for "compassionate release" filed by individual defendants under section 3582, see Guidelines Manual § 1B1.13 (2023), and it now includes, inter alia, an expanded list of specified extraordinary and compelling reasons, see id.

**IV.    DISCUSSION**

A court may reduce a previously imposed term of imprisonment where an incarcerated individual (1) has exhausted his or her administrative remedies; (2) has shown extraordinary and compelling circumstances justifying the reduction; and (3) has demonstrated that the relevant factors, enumerated under section 3553(a) of title 18 of the United States Code, also warrant reduction.  See United States v. Keitt, 21 F.4th 67, 71 (2d Cir. 2021).  The court addresses these requirements in turn.

   A.    Exhaustion of Administrative Remedies

An inmate may move for a sentence reduction only "after the [inmate] has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [inmate]'s behalf or the lapse of 30 days from the receipt of such a

request by the warden of the [inmate]'s facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A).  Here, Mr. Estremera provided proof that he filed a request for "Compassionate Release/Reduction in Sentence," which his acting Warden denied on September 13, 2023.  See Mot. at 10. ("Denial Letter").  The government has waived its arguments[1] that Estremera failed to exhaust his administrative remedies, and thus does not contest the sufficiency of this proof of exhaustion.  See Mem. in Opp. at n4. Indeed, the court concludes, based on the proffered materials, see Denial Letter, that Mr. Estremera has exhausted his administrative remedies within the meaning of section 3582, such that the court may consider the merits of his Motion.

      B.      <u>Extraordinary and Compelling Circumstances</u>

Mr. Estremera argues that his health conditions create extraordinary and compelling circumstances justifying his request for a reduction in sentence.  See Def.'s Mem. at 4-6.  In his Motion, Mr. Estremera argues that his health has declined since he was sentenced, that his health conditions are worsening, and that he could receive better care from his primary care doctor outside of BOP custody.  See Def.'s Mot., see Def.'s Mem.  He also argues that his conditions place him at a higher risk of dying from COVID-19 and the flu.  See Def.'s Mot. at 5-7.

Mr. Estremera has suffered from chronic asthma since he was a child.  See PSR at ¶¶ 63-65.  In 2006, Mr. Estremera was diagnosed with multiple sclerosis ("M.S."). See id. at ¶ 64.  Mr. Estremera reports that he often needs a cane to walk, and that he

---

[1] In its opposition, the government notes that Mr. Estremera did not appeal the acting warden's denial, nor did he wait 30 days before filing his pro se motion.  However, "in light of the amount of time that has passed since [he] filed his motion and the fact that counsel subsequently filed a supplemental motion on his behalf," the government "waives any argument that Estremera failed to exhaust" his administrative remedies.  Mem. in Opp. at n4.  Thus, the court will consider the exhaustion of administrative remedies as uncontested.

has experienced "flare-ups" of his M.S. which cause him to lose balance and have problems with his vision.  See Def.'s Mot. at 7, PSR at ¶ 64.  These conditions were known to the court at sentencing, and as a result the court recommended that Mr. Estremera be designated to Federal Medical Center Devens, where he is currently incarcerated.  See Judgment (Doc. No. 260).  Since his incarceration, Mr. Estremera's BOP medical records indicate that he also suffers from neurogenic bladder and bowel, and that he was newly diagnosed with type 2 diabetes in 2022.  See BOP Medical Records (Doc. No. 415) at 2,8.  Mr. Estremera's immunization records indicate that, since he was incarcerated, he has twice declined to be vaccinated for COVID-19 and, although he received an influenza vaccine in 2022, he declined to receive one in 2023.  See BOP immunization records (Doc. No. 431).

      The court does not doubt the seriousness of Mr. Estremera's medical conditions and is sympathetic to the day-to-day struggles they create for him.  However, in the court's view, his medical conditions do not rise to the level of extraordinary and compelling reasons for a sentence reduction.  While Mr. Estremera describes his type 2 diabetes as a "terminal illness," the court is not persuaded that it is a "terminal illness" as defined in the U.S. Sentencing Guidelines. See Guidelines Manual § 1B1.13(b)(1)(A) (2023), (defining a "terminal illness" as a "serious and advanced illness with an end-of-life trajectory," and giving the examples of "metastatic solid-tumor cancer, [ALS], end-stage organ disease, and advanced dementia.")  And while M.S. is a serious and potentially debilitating illness, the most recent medical records submitted by counsel suggest that Mr. Estremera has been receiving regular treatment and that, with

5

medication, he was "without [M.S.] relapses . . . for three or so years," See BOP Medical Records at 8.

The medical records seen by the court also do not suggest that Mr. Estremera is receiving inadequate medical care at FMC Devens. See Guidelines Manual § 1B1.13(b)(1)(C) (2023) (listing as an extraordinary circumstance, if "[t]he defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death (emphasis added)"). The records show that Mr. Estremera has been prescribed medication and vitamin supplements to take daily for his M.S. and diabetes, as well as an inhaler to take "as needed" for his asthma. See BOP Medical Records at 7. Mr .Estremera also receives regular infusion treatments for his M.S. See Def.'s Mot. at 7. His records also indicate that he has been prescribed multiple medications for his bowel and urinary tract symptoms. See BOP Medical Records at 2,8. The records also do not show a rapid deterioration in any of Mr. Estremera's conditions. They describe his asthma as under control and his asthma inhaler as a largely precautionary measure. The records describe his bowel medication as having achieved "excellent results" and his M.S. as being without recent relapses. See BOP Medical Records at 3,8. Again, the court does not doubt the seriousness of Mr. Estremera's conditions or the difficulties they pose to him, but the court does not see evidence of inadequate care or a medical deterioration that would presently give rise to extraordinary and compelling reasons under 18 U.S.C. § 3582(c)(1)(A)(i).

Finally, the court shares Mr. Estremera's concerns that his medical conditions place him at a heightened risk from COVID-19 and the flu. The court is especially

concerned in light of the fact that he has refused vaccinations for both diseases. According to the CDC, COVID-19 vaccines and boosters significantly reduce the risk of hospitalization and death from COVID-19 among immunocompromised adults.  See COVID-19 Vaccine Effectiveness Update, CTRS. FOR DISEASE CONTROL & PREVENTION, https://covid.cdc.gov/covid-data-tracker/#vaccine-effectiveness.

Courts in this Circuit have held that while "being offered and refusing the COVID-19 vaccine is not an automatic, disqualifying factor for compassionate release, refusing the vaccine without informed reason substantially detracts from an incarcerated person's claim of exceptional medical vulnerability in prison . . . " United States v. Hubbard, No. 3:17CR173 (JBA), 2021 WL 5275997, at *4 (D. Conn. Nov. 12, 2021). When an incarcerated individual has refused the COVID-19 vaccine, courts "have nearly uniformly denied compassionate release sought for medical reasons." United States v. Robinson, No. 17 CR. 611-7 (AT), 2021 WL 1565663, at *3 (S.D.N.Y. Apr. 21, 2021).  See also United States v. Burden, No. 3:00-CR-263 (JCH), 2021 WL 3742111, at *3 (D. Conn. Aug. 23, 2021) ("In the absence of . . . a showing [of a medical reason for declining the vaccine], taking the vaccine would reduce . . . [an inmate's] risk of COVID-19 exposure dramatically.  It cannot be, in this court's view, that an inmate can decline a vaccine which, if taken, will largely avoid the risks which themselves form the basis for his position that extraordinary circumstances exist to justify a reduction in his sentence.")

The Second Circuit has held that an inmate should be afforded the opportunity to "explain why his release would be justified even if . . . he has been offered access to a

vaccine." United States v. Jones, 17 F.4th 371, 375 (2d Cir. 2021).  Mr. Estremera offers no such justification here for declining the vaccine.

It does not appear, based on Mr. Estremera's immunization records or the medical records submitted by counsel, that Mr. Estremera's decision to decline the COVID-19 vaccine was based on professional medical advice or an informed medical opinion.  The only justification that Mr. Estremera's provides in his memorandum – without any supporting evidence or citation – is that there are "known negative side effects" of the vaccine.  Def.'s Mem. at 5.  Counsel does not explain how any side effects outweigh the undoubtedly grave risks from COVID-19.  Given Mr. Estremera's failure to offer an informed medical reason for his refusal to get vaccinated, the risk due to COVID-19 or the flu in custody does not support a finding of exceptional circumstances warranting his release.

Because Mr. Estremera appears to be receiving adequate treatment for his medical conditions, and because he has not reduced his risks through available COVID and flu vaccines, the court does not find exceptional circumstances that warrant his release.

C.  Section 3553(a) Factors

Having found that Mr. Estremera has not demonstrated extraordinary and compelling reasons justifying a sentencing reduction, the court does not need to undertake a detailed analysis of whether section 3553(a) factors also favor a reduction. See 18 U.S.C. § 3553(a).  However, the court will briefly note that several factors in the present case weight strongly against granting Mr. Estremera's compassionate release.

In addition to the seriousness of his offense, the court must consider whether a sentence affords "adequate deterrence," see § 3553(a)(2)(B). To that end, the court is mindful of the fact that the present offense began shortly after Mr. Estremera finished a prior 10-year sentence, and during his term of supervised release. The court must also consider the need to "protect the public from further crimes . . .," see § 3553(a)(2)(C). While Mr. Estremera argues that he is now a "minimal public safety risk" in light of his medical conditions, see Def.'s Mot. at 7, the court cannot accept that premise automatically when Mr. Estremera's conduct in the present case took place more than twelve years into his struggle with M.S. See PSR at ¶ 48. Mr. Estremera's proposed released plan is to live with his mother, see Def's Mem. at 6, and the court is grateful that option exists to him. However, the court must also consider the fact that Mr. Estremera was living at the same address as his mother previously when he became involved in the distribution of fentanyl. See PSR at ¶¶ 58, 61. Thus, the court is not persuaded that, were it to find extraordinary and compelling reasons for a sentence reduction, that the factors in 18 U.S.C. § 3553(a) would lean in favor of a reduction.

## V.     CONCLUSION

For the reasons stated above, Mr. Estremera's Motion for Sentence Reduction (Doc. No. 403) is denied. The court grants both accompanying motions to seal Mr. Estremera's medical records. See Motion to Seal BOP Medical Records (Doc. No. 416), Motion to Seal Exhibit 1 to the Government's Memorandum (Doc. No. 430).

**SO ORDERED.**

Dated at New Haven, Connecticut this 30th day of July 2024.

                                                      /s/ Janet C. Hall
                                      Janet C. Hall
                                      United States District Judge